**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **SLEEP QUARTERS PLUS, INC.,** | § | **CASE NO. 25-34803-swe-11** |
| | § | **Chapter 11** |
| **Debtor.** | § | |

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**
<u>**UNDER SUBCHAPTER V OF CHAPTER 11**</u>

Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 South Dallas St.
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

# TABLE OF CONTENTS

Article I.        INTRODUCTION.................................................................................................4

Article II.       DEFINITIONS ..................................................................................................4

Article III.      VOTING ON THE PLAN AND OBJECTIONS ..............................................7

Article IV.       BACKGROUND...............................................................................................8
    4.1    Background of the Debtor and Events Leading to Bankruptcy ..........................8
    4.2    Significant Events Since the Petition Date........................................................8
    4.3    Assets of the Debtor .........................................................................................9
    4.4    Liabilities of the Debtor ...................................................................................9
    4.5    Tax Consequences of the Plan .........................................................................10

Article V.        LIQUIDATION ANALYSIS.............................................................................11

Article VI.       PLAN OF REORGANIZATION.......................................................................12
    6.1    Treatment of Unclassified Claims, Administrative Expense Claims, Priority
        Claims, and U.S. Trustee Fees .........................................................................12
    6.2    Classification of Claims and Interests...............................................................13
    6.3    Claims and Interests Impaired Under the Plan..................................................13
    6.4    Treatment of Classified Claims and Interests Under the Plan ..........................13
    6.5    Implementation of the Plan ..............................................................................15
    6.6    Feasibility of the Plan.......................................................................................15
    6.7    Provisions Regarding Distributions and Objections to Claims.........................15
    6.8    Executory Contracts .........................................................................................17

Article VII.      RESERVATION OF CLAIMS...........................................................................17
    7.1    Reservation of Claims and Causes of Action....................................................17
    7.2    Return of Fraudulent Transfers ........................................................................17

Article VIII.     EFFECT OF CONFIRMATION, DISCHARGE, RELEASES
AND INJUNCTION .........................................................................................................18
    8.1    Vesting of Property ..........................................................................................18
    8.2    Plan Creates New Obligations..........................................................................18
    8.3    Legal Binding Effect ........................................................................................18
    8.4    Discharge..........................................................................................................18
    8.5    Satisfaction of Claims and Interests .................................................................18
    8.6    Modification of the Plan...................................................................................19
    8.7    Retention of Jurisdiction ..................................................................................19
    8.8    Temporary Injunction.......................................................................................20

Article IX.       MISCELLANEOUS PROVISIONS ..................................................................20
    9.1    Request for Relief Under Bankruptcy Code § 1129(b).....................................20
    9.2    Headings...........................................................................................................20
    9.3    Due Authorization............................................................................................20

| 9.4 | Further Assurances and Authorizations | 21 |
| 9.5 | Applicable Law | 21 |
| 9.6 | No Interest | 21 |
| 9.7 | Post-Confirmation Actions | 21 |
| 9.8 | Notices of Default | 21 |
| 9.9 | Notices | 21 |
| 9.10 | Payment Dates | 22 |
| 9.11 | De Minimis Distribution | 22 |

EXHIBITS:

Exhibit 1 – Operating Summary
Exhibit 2 – Schedule A/B
Exhibit 3 – Projections
Exhibit 4 – Closing Statement

# ARTICLE I.  INTRODUCTION

This Plan of Reorganization under Subchapter V of Chapter 11 (the "Plan") is proposed by Sleep Quarters Plus, Inc., the debtor in this Bankruptcy Case (the "Debtor").  This case was initiated by the filing of a voluntary petition for relief by the Debtor on December 2, 2025 under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. This *Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* (the "Plan") is provided pursuant to the Bankruptcy Code to all the Debtor's known creditors and other parties in interest. The Plan is a Plan of Reorganization. Under the Plan the Debtor will sell its real property and improvements located in Waxahachie and Ennis, Texas, and use the sale proceeds to fund the payments due under the Plan. The details of the Plan are set out in Article VI of this document.

The Office of the United States Trustee appointed Scott M. Seidel to serve as the Subchapter V Trustee in this Case (the "Trustee").  The Trustee is responsible for monitoring the Case and ensuring the Debtor's compliance with the applicable provisions of the U.S. Bankruptcy Code.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

# ARTICLE II.  DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this Case No. 25-34803 pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means February 10, 2026, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in the Assets.

"**Class**" means any class into which Claims are classified pursuant to Article VI of the Plan. Each subclass of a class shall be treated as a separate class.

"**Collateral**" means any Assets of the Debtor subject to a valid Lien held by a Secured Creditor.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of

a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means Sleep Quarters Plus, Inc., the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor after Confirmation of the Plan.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means December 2, 2025, the date on which this Case was filed and an Order for Relief was entered by the Court.

"**Plan**" means this Plan of Reorganization under Subchapter V of Chapter 11, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

"**Priority Wage Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4)(A).

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

"**Pro Rata**" means the percentage that an Allowed Claim represents in relation to the total Allowed Claims in the relevant Class.

"**Schedules and Statements**" means and refers to each of the Debtor's bankruptcy schedules A/B, D-H and Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the collateral and an Unsecured Claim for the remainder.

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE III.  VOTING ON THE PLAN AND OBJECTIONS

### 3.1  Who May Vote

You are entitled to vote on the Plan unless:

>    (1)     your Claim or Interest is Disputed (as defined herein);
>
>    (2)     your Class receives no distribution (presumed to reject the Plan);
>
>    (3)     your Class is "unimpaired" (presumed to accept the Plan – *See* Article VI to see if your Class is Impaired or unimpaired); or
>
>    (4)     your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes (you must do that soon so that your motion can be heard before votes are counted. *See* Bankruptcy Rule 3018(a)).

### 3.2 How to Vote

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed order regarding voting and procedures.

### 3.3 Effect of Vote

After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan or that has not accepted the plan.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. A Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

### 3.4 Who May Object

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to object, see the enclosed order.

## ARTICLE IV. BACKGROUND

### 4.1 Background and Operations of the Debtor

The Debtor is the owner of 1.37 acres of improved real property located at 500 N. Highway 77, Waxahachie, Texas (the "Waxahachie Property") and 2.456 acres of improved real property located at 2400 W. Ennis Ave., Ennis, Texas 75117 (the "Ennis Property") (collectively, the "Properties"). The Debtor sells home furnishings and mattresses from its stores located on the Properties.

Attached hereto as **Exhibit 1** is the operating summary of the Debtor.

### 4.2 Significant Events Since the Petition Date

On December 24, 2025, the Debtor filed a motion to sell the Ennis Property to Equity Investment Acquisitions, LLC for the price of $975,000.00. On February 9, 2026, the Debtor filed a motion to sell the Waxahachie Property to RSDGP, LLC for the price of $2,250,000.00. The sale of the Ennis Property closed the week of May 4, 2026 to another buyer for $975,000. The

sale of the Waxahachie Property did not close and the buyer backed out. The Waxahachie Property is still listed for sale.

### 4.3 Assets of the Debtor

The Debtor owned the following Assets as of the Petition Date:

a. The Ennis Property, under contract for a sale price of $975,000.00.

b. The Waxahachie Property, under contract for a sale price of $2,250,000.00.

c. Cash in the amount of $49,000.00;

d. Inventory in the amount of $320,228.00.

e. Furniture, equipment, and fixtures valued at $250.00; and

f. A vehicle valued at $5,000.00.

Such Assets are listed in detail on the Debtor's Schedule B, which is attached hereto as **Exhibit "2"**.

### 4.4 Liabilities of the Debtor

The Debtor scheduled total liabilities (excluding Administrative Expense Claims) of $1,647,585.00 as of the Petition Date. Creditors may file Proofs of Claim that differ from the amounts shown in the Schedules.

The Debtor's liabilities are further described as follows:

a. **Administrative Expense Claims.**

The Estates will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code §503(b) through the Confirmation Date, including Fee Claims of Joyce W. Lindauer Attorney, PLLC as the Debtor's bankruptcy counsel. Before the Debtor pays any Fee Claims, the Bankruptcy Court will have determined the reasonableness of such fees and expenses.

b. **Secured Claims.**

The Texas Workforce Commission filed a Secured Claim in the amount of $5,556.24.

Ellis County, Texas filed a Secured Claim in the amount of $100,412.63.

The Debtor scheduled a Secured Claim for Citizens Bank of Texas in the amount of $1,589,623.34.

### c. Unsecured Claims.

The Debtor scheduled total Unsecured Claims in the amount of $57,962.56.

Cellco Partnership d/b/a Verizon Wireless filed an Unsecured Claim in the amount of $2,277.14.

### 4.5 Tax Consequences of the Plan

**a.** **Disclaimer.** The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders of Claims are urged to consult with their tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

**b.** **Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the particular circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

**c.** **Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

**d.** **Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

# ARTICLE V.  CHAPTER 7 LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy Priority Claims that are senior to general Unsecured Claims (and Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

## Liquidation Analysis

Liabilities shown below are as scheduled by the Debtor, or, if a Creditor filed a Proof of Claim, in the amount of said Claim.

The Debtor believes that in a Chapter 7 liquidation the Chapter 7 trustee would complete the sale of Properties and would agree to lift the automatic stay to allow Secured Creditors to foreclose their liens on the personal property. The Debtor believes the value of its non-cash assets would be reduced by approximately 1% due to costs of liquidation, and that the net proceeds from the foreclosure of its personal property would likely be no more than 50% of its scheduled value.

Based on the above, the Debtor estimates that the results of a Chapter 7 liquidation sale would be as follows:

### Assets in Chapter 7 liquidation

| | |
|---|---|
| Cash | $49,000 |
| Ennis Property | $975,000 |
| Waxahachie Property | $2,250,000 |
| Inventory (50% of scheduled value) | $160,114 |
| Furniture, fixtures and equip. (50% of scheduled value) | $125 |
| Vehicles (50% of scheduled value) | $2,500 |
| Gross proceeds | $3,436,739 |
| Less 1% sale costs | <$34,367> |
| Total Assets in Ch. 7 liquidation | $3,402,372 |

**Liabilities**

| | |
|---|---|
| Administrative Expenses and US Trustee Fees | $25,000[1] |
| Secured Claims | $1,695,592 |
| Unsecured Claims | $60,240 |
| | |
| Total Liabilities | $1,780,832 |

*NOTE:* **As shown by the above chart, in a Chapter 7 liquidation all Claims would be paid in full. Under this Plan, all Claims will also be paid in full, with interest, upon the sale of the Properties. Therefore, Creditors will receive at least as much under this Plan as they would in a Chapter 7 liquidation.**

## ARTICLE VI.  PLAN OF REORGANIZATION

**6.1** **Treatment of Unclassified Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees**

**a.** **Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

**b.** **Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**c.** **Fee Claims.** Each professional person whose retention with respect to  this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The Subchapter V Trustee is a professional in this case. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date,

---

1. Debtor's estimate.

from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**d.**     **Administrative Expense Claims Bar Date.** Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this section) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent such Claim is allowed by Final Order.

**e.**     **Priority Claims.** Priority Claims, if any, shall be paid in full over the period from the Effective Date to the expiration of 60 (sixty) months from the Petition Date, with interest thereon at the statutory rate of interest.  The Claims will be paid in equal monthly installments of principal and interest, commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter. The Debtor believes there are no such claims.

### 6.2     Classification of Claims and Interests

Claims against the Debtor, excluding Administrative Expense Claims and Priority Claims. are divided into the following Classes:

Class 1 Claims:  Allowed Secured Claim of Ellis County, Texas.

Class 2 Claims:  Allowed Secured Claim of the Texas Workforce Commission.

Class 3 Claims:  Allowed Secured Claim of Citizens Bank of Texas.

Class 4 Claims:  Allowed Unsecured Claims.

Class 5 Equity Interests: Equity Interest Holders.

### 6.3     Claims and Interests Impaired Under the Plan

The Claims in all the above Classes are Impaired and entitled to vote on this Plan, except Class 5 Equity Interests, which are not Impaired.

### 6.4     Treatment of Classified Claims and Interests Under the Plan

**General Provisions Regarding Treatment of Claims.**

All Allowed Secured Claimants shall retain all their liens on any Collateral securing their Claims.

No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and an Unsecured Claim for the remainder.

**The Debtor will complete the sale of the Properties as soon as possible. The Debtor anticipates the Waxahachie Property will be sold within 6 months from the Effective Date. Net proceeds of the sales will be applied first to pay Claims secured by Collateral, in order of lien priority, then to pay Allowed Unsecured Claims. Should the Collateral for an Allowed Secured Claim be sold during the term of this Plan, the Claim will be paid in full in order of lien priority at the closing of the sale to the extent sale proceeds are available after closing costs, and any remaining Claim will be treated as an Unsecured Claim. All Allowed Claims will receive payments as set out below pending the sales of the Properties.**

**Class 1: Allowed Secured Claim of Ellis County, Texas.** This Claim shall be paid in full in equal monthly installments of principal with interest thereon at the rate of 12% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Petition Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 2: Allowed Secured Claim of Texas Workforce Commission.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the statutory rate. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3 Claims: Allowed Secured Claim of Citizens Bank of Texas.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal and interest at the rate of 6.75% per annum with a 20 year amortization. The remaining balance shall be paid at the end of the Plan Term. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 6 months from the Effective Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 4 Claims: Allowed Unsecured Claims.** These Claims shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 1% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 36 months from the Effective Date Date. Interest shall begin to accrue on the Effective Date. Should the sales of the Properties result in net sale proceeds in excess of Allowed Secured Claims against those Properties, such proceeds shall

be applied to payment of Allowed Unsecured Claims on a Pro Rata basis. These Claims are Impaired, and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 5: Equity Interests:** Equity Interests shall be retained by the owners of said Interests.

### 6.5 Implementation of the Plan

The Debtor will complete the sale of the Properties as soon as possible and the proceeds of the sales will be used to pay Allowed Secured Claims in full, and then to pay Allowed Unsecured Claims.

Risk factors. Although the Debtor believes the Plan satisfies all requirement necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes to accept the Plan as modified.

### 6.6 Feasibility of the Plan

The Debtor believes the Plan is feasible because all creditors with Allowed Claims will be paid under fair and equitable terms. Projections for the feasibility of the Plan are attached hereto as **Exhibit "3"** and incorporated herein by this reference.

### 6.7 Provisions Regarding Distributions and Objections to Claims

a. **Time of Payment.** The first month in which payments will be made under this Plan will be as provided by the terms of this Plan.

b. **Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor' bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

c. **Confirmation under Section 1191(b) – Distributions by Trustee.** If the Plan is Confirmed as a non-consensual plan under the provisions of 11 U.S.C. section 1191(b), the Trustee shall serve as the payment administrator pursuant to 11 U.S.C. section 1194(b) for the purpose of making distributions under the Plan and shall be compensated for his work as payment administrator at the same hourly rate as may be approved by the Court for his pre-Confirmation work in this Case. The Debtor shall submit such funds as are necessary for the Trustee to make distributions under the Plan no later than seven (7) days prior to the date such distributions are due.

**d. Confirmation under Section 1191(b) – Disposable Income Distributions.** In the alternative to the treatment of Class 8 Unsecured Claims as stated in Article VI above, if the Plan is determined to be a "non-consensual" plan under Bankruptcy Code Section 1191(b), all of the Debtor's disposable income will be paid pro-rata to Class 4 Claimants on a monthly basis over 36 months. "Disposable income" shall mean all income remaining after the Debtor's payment of its reasonable and necessary expenses, less a reserve of $10,000 to be built by the Debtor's retention of $2,500 per month for the first four months following the Effective Date.

**e. No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

**f. Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim. Any Proof of Claim filed after the Bar Date shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

**g. Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class provisions. If the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

**h. Post-Confirmation Fees and Expenses of the Trustee.** The Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Trustee under this paragraph from the Plan Payments by submitting a fee and expense statement to the Reorganized Debtor, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Trustee shall be compensated for his post-confirmation duties at normal hourly rates and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtor to the Trustee. The Trustee's fees and expense shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Trustee's fees and

expenses disclosed therein. If no objection is received, the Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

### 6.8 Executory Contracts

**General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under this section of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor hereby is conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

## ARTICLE VII.  RESERVATION OF CLAIMS

### 7.1 Reservation of Claims and Causes of Action

Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' Schedules and Statements.

### 7.2 Return of Fraudulent Transfers

Any Creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE VIII.  EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

### 8.1    Vesting of Property

On the Confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan. However, if the Plan is Confirmed as a non-consensual plan under the provisions of 11 U.S.C. section 1191(b), the property of the Estate will not re-vest in the Debtor on the Confirmation Date but will remain as property of the Estate until the final payment is made under the Plan. This Plan will evidence the release of all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

### 8.2    Plan Creates New Obligations

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

### 8.3    Legal Binding Effect

The provisions of this Plan shall bind all holders of Claims and interests, whether or not they accept this Plan.

### 8.4    Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 8.5    Satisfaction of Claims and Interests

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

### 8.6 Modification of the Plan

**Prior to Confirmation.** The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

**After Confirmation.** The Debtor may modify the Plan at any time after Confirmation, upon compliance with Bankruptcy Code § 1127. The Debtor or its attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without notice to Creditors or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

### 8.7 Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

    **a.** to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

    **b.** to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

    **c.** to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

    **d.** to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

    **e.** to hear and determine all causes of action;

    **f.** to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

    **g.** to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

**h.**     to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

**i.**     to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

**j.**     to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

**k.**     to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

### 8.8     Temporary Injunction

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

## ARTICLE IX.  MISCELLANEOUS PROVISIONS

### 9.1     Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b).

### 9.2     Headings

All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### 9.3     Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the

Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

### 9.4 Further Assurances and Authorizations

The Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

### 9.5 Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

### 9.6 No Interest

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

### 9.7 Post-Confirmation Actions

After Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

### 9.8 Notices of Default

In the event of a default under the Plan, the affected Claimant or its counsel shall provide notice to counsel for the Debtor/Reorganized Debtor. The Debtor/Reorganized Debtor shall have twenty (20) days to cure the default. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of notice, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court without further notice.

### 9.9 Notices

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. A copy of all notices provided to the Debtor under this Plan shall be sent to: (i) the Debtor at P.O. Box 1223, Ennis, TX 75120 and (ii) the Debtor's attorney, Joyce W.

Lindauer, Joyce W. Lindauer Attorney, PLLC, 117 S. Dallas St., Ennis, Texas 75119 Telephone: (972) 503-4033; Fax: (972) 503-4034; Email: joyce@joycelindauer.com.

**9.10    Payment Dates**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

**9.11    De Minimis Distribution**

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim. Rather, any such de minimis distribution amount shall be held by the Debtor, added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.

Dated: May 13, 2026.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas St.
Ennis TX 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

*/s/ Gaye Mitschke*
Owner of the Debtor

EXHIBIT "1"

# Sleep Quarters Plus Inc.

**5/13/2026**

| | | |
|---|---|---|
| Source: | Client Actuals Spreadsheet | |
| Nr of months: | | 4 |

|  |  |  |  |  |  |
|---|---|---|---|---|---|

**Revenue and Expense Overview**

| MOR: | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Average |
|---|---|---|---|---|---|
| A. Gross Revenue | $ 54,465.56 | $ 67,478.52 | $ 29,830.71 | $ 34,271.15 | $ 46,511.49 |
| B. Expenses (excl. reorganization) | $ 52,605.94 | $ 52,474.79 | $ 42,429.12 | $ 36,219.63 | $ 45,932.37 |
| D. Net Income (A - B) | $ 1,859.62 | $ 15,003.73 | $ (12,598.41) | $ (1,948.48) | $ 579.12 |

| Revenue | | | | | |
|---|---|---|---|---|---|
| Sales Income | $ 54,465.56 | $ 67,478.52 | $ 29,830.71 | $ 34,271.15 | $ 46,511.49 |
| | | | | | $ - |
| Totals | $ 54,465.56 | $ 67,478.52 | $ 29,830.71 | $ 34,271.15 | $ 46,511.49 |

| Expenses (Excluding Reorganization) | | | | | |
|---|---|---|---|---|---|
| Total Expense | $ 52,605.94 | $ 52,474.79 | $ 42,429.12 | $ 36,219.63 | $ 45,932.37 |
| | | | | | $ - |
| | | | | | $ - |
| | | | | | $ - |
| Totals | $ 52,605.94 | $ 52,474.79 | $ 42,429.12 | $ 36,219.63 | $ 45,932.37 |

The above expenses to not include reorganization expenses below.

| Reorganization Expenses | | | | | |
|---|---|---|---|---|---|
| Professional Fees | 2,000.00 | | 2,000.00 | | $ 1,000.00 |
| US Trustee Fees | | | | | $ - |
| Other | | | | | $ - |
| Totals | $ 2,000.00 | $ - | $ 2,000.00 | $ - | $ 1,000.00 |



EXHIBIT "2"

Fill in this information to identify the case:

Debtor Name **Sleep Quarters Plus, Inc**

United States Bankruptcy Court for the: **Northern** District of **Texas**
(State)

Case number (If known): **25-34803**

☑ Check if this is an amended filing

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|
| 2. **Cash on hand** | |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. **Ennis State Bank** | **Checking account** | **9 3 5 5** | **$0.00** |

4. **Other cash equivalents** *(Identify all)*

   4.1
   4.2

5. **Total of Part 1** — $0.00

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and prepayments |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

| 7.1 **Ennis State Bank** | **$49,000.00** |
|---|---|

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1 _____   _____

8.2 _____   _____

9. **Total of Part 2**

Add lines 7 through 8. Copy the total to line 81.

| $49,000.00 |
|---|

---

### Part 3:   Accounts receivable

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts receivable**

11a. 90 days old or less: _____ - _____ =.....➔   _____

face amount                doubtful or uncollectible accounts

11b. Over 90 days old: _____ - _____ =.....➔   _____

face amount                doubtful or uncollectible accounts

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

_____

---

### Part 4:   Investments

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

| | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1 _____   _____   _____

14.2 _____   _____   _____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                % of ownership:

15.1. _____   _____   _____   _____

15.2. _____   _____   _____   _____

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1 _____     _____     _____

16.2 _____     _____     _____

17. **Total of Part 4**

    Add lines 14 through 16. Copy the total to line 83.                    [                    ]

---

**Part 5:**     Inventory, excluding agriculture assets

---

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ☐ No. Go to Part 6.

    ☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| | MM / DD / YYYY | | | |
| 20. **Work in progress** | | | | |
| | MM / DD / YYYY | | | |
| 21. **Finished goods, including goods held for resale** | | | | |
| SEE ATTACHED LIST | 12/02/2025 MM / DD / YYYY | $104,018.67 | Retail Value | $320,228.00 |
| 22. **Other inventory or supplies** | | | | |
| | MM / DD / YYYY | | | |

23. **Total of Part 5**

    Add lines 19 through 22. Copy the total to line 84.                    [  $320,228.00  ]

24. **Is any of the property listed in Part 5 perishable?**

    ☑ No

    ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

    ☑ No

    ☐ Yes.  Book value _____ Valuation method _____ Current value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

    ☑ No

    ☐ Yes

---

**Part 6:**     Farming and fishing-related assets (other than titled motor vehicles and land)

---

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ☑ No. Go to Part 7.

    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| 29. **Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |

33. **Total of Part 6**
Add lines 28 through 32. Copy the total to line 85.

34. **Is the debtor a member of an agricultural cooperative?**

❏ No

❏ Yes. Is any of the debtor's property stored at the cooperative?

    ❏ No

    ❏ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

❏ No

❏ Yes.  Book value _____ Valuation method _____ Current value _____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

❏ No

❏ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

❏ No

❏ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

❏ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | | | |

| | | | |
|---|---|---|---|
| **Desks** | unknown | | $100.00 |

40. **Office fixtures**

41. **Office equipment, including all computer equipment and communication systems equipment and software**

| | | | |
|---|---|---|---|
| **Computers and Software** | unknown | | $150.00 |

42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

    42.1 _____

    42.2 _____

    42.3 _____

43. **Total of Part 7**

    Add lines 39 through 42. Copy the total to line 86.

    | |
    |---|
    | $250.00 |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

    ☑ No

    ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

    ☑ No

    ☐ Yes

---

**Part 8:** Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

    ☐ No. Go to Part 9.

    ☑ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 **2008 International Delivery Truck** | unknown | | $5,000.00 |
| 48. **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 _____ | | | |
| 48.2 _____ | | | |
| 49. **Aircraft and accessories** | | | |
| 49.1 _____ | | | |

49.2 _____

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

   _____

51. **Total of Part 8**

   Add lines 47 through 50. Copy the total to line 87.          | **$5,000.00** |

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

   ☑ No

   ☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

   ☑ No

   ☐ Yes

## Part 9:      Real property

54. **Does the debtor own or lease any real property?**

   ☐ No. Go to Part 10.

   ☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 **Ennis Building / 2400 W Ennis Ave Ennis, TX 75119** | **Fee Simple** | **unknown** | | **$1,968,925.00** |
| 55.2 **Waxahachie Building / 500 N Hwy 77 Waxahachie, TX 75165** | **Fee Simple** | **unknown** | | **$2,300,000.00** |

56. **Total of Part 9**

   Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.          | **$4,268,925.00** |

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

   ☑ No

   ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

   ☑ No

   ☐ Yes

## Part 10:      Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

   ☑ No. Go to Part 11.

   ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. **Internet domain names and websites** | | | |
| 62. **Licenses, franchises, and royalties** | | | |
| 63. **Customer lists, mailing lists, or other compilations** | | | |
| 64. **Other intangibles, or intellectual property** | | | |
| 65. **Goodwill** | | | |

66. **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

❑ No

❑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

❑ No

❑ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

❑ No

❑ Yes

**Part 11:     All other assets**

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.

❑ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

_____     _____  −  _____  = ➔  _____
                            Total face amount      doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

    Description (for example, federal, state, local)

    _____    Tax year _____    _____

    _____    Tax year _____    _____

    _____    Tax year _____    _____

73. **Interests in insurance policies or annuities**

    _____                           _____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

    _____                           _____

    **Nature of claim**        _____

    **Amount requested**       _____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

    _____                           _____

    **Nature of claim**        _____

    **Amount requested**       _____

76. **Trusts, equitable or future interests in property**

    _____                           _____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

    _____                           _____

    _____                           _____

78. **Total of Part 11**

    Add lines 71 through 77. Copy the total to line 90.                _____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

    ❏ No
    ❏ Yes

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form.**

| | Type of property | Current value of personal property | Current value of real property |
|---|---|---|---|
| 80. | **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $0.00 | |
| 81. | **Deposits and prepayments.** *Copy line 9, Part 2.* | $49,000.00 | |
| 82. | **Accounts receivable.** *Copy line 12, Part 3.* | | |
| 83. | **Investments.** *Copy line 17, Part 4.* | | |
| 84. | **Inventory.** *Copy line 23, Part 5.* | $320,228.00 | |
| 85. | **Farming and fishing-related assets.** *Copy line 33, Part 6.* | | |
| 86. | **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $250.00 | |
| 87. | **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $5,000.00 | |
| 88. | **Real property.** *Copy line 56, Part 9.* ........➔ | | $4,268,925.00 |
| 89. | **Intangibles and intellectual property.** *Copy line 66, Part 10.* | | |
| 90. | **All other assets.** *Copy line 78, Part 11.* | + | |
| 91. | **Total.** *Add lines 80 through 90 for each column*............91a. | $374,478.00 | + 91b. $4,268,925.00 |
| 92. | **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. .................... | | $4,643,403.00 |

Fill in this information to identify the case:

Debtor name     **Sleep Quarters Plus, Inc**

United States Bankruptcy Court for the:

    **Northern District of Texas**

Case number (if known):     **25-34803**      Chapter  **11**

☑ Check if this is an amended filing

## Official Form 206Sum

# Summary of Assets and Liabilities for Non-Individuals    **12/15**

### Part 1: Summary of Assets

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

  1a. **Real Property:**

    Copy line 88 from *Schedule A/B*..................................................................................................................      **$4,268,925.00**

  1b. **Total personal property:**

    Copy line 91A from *Schedule A/B*..................................................................................................................      **$374,478.00**

  1c. **Total of all property:**

    Copy line 92 from *Schedule A/B*..................................................................................................................      **$4,643,403.00**

### Part 2: Summary of Liabilities

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)

  Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.................      **$1,589,623.34**

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

  3a. **Total claim amounts of priority unsecured claims:**

    Copy the total claims from Part 1 from line 5a of *Schedule E/F*....................................................................      **$0.00**

  3b. **Total amount of claims of non-priority amount of unsecured claims:**

    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.......................................      **+**      **$57,962.56**

4. **Total liabilities**...........................................................................................................................................      **$1,647,585.90**

  Lines 2 + 3a + 3b

Fill in this information to identify the case:

Debtor name     **Sleep Quarters Plus, Inc**

United States Bankruptcy Court for the:

    **Northern District of Texas**

Case number (if known):     **25-34803**

☑ Check if this is an amended filing

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors    **12/15**

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

❑   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

❑   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

❑   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

❑   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

❑   *Schedule H: Codebtors* (Official Form 206H)

❑   *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206A-Summary)

☑   *Amended Schedule*  **A/B**

❑   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

❑   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **12/17/2025**
     MM/ DD/ YYYY

**X**   **/s/ Gaye Mitschke**
Signature of individual signing on behalf of debtor

**Gaye Mitschke**
Printed name

**Owner**
Position or relationship to debtor

Official Form B202      **Declaration Under Penalty of Perjury for Non-Individual Debtors**

| Dept ID | Description | Value | Pct of Total | Retail Value |
|---|---|---|---|---|
| 311 | MISCELLANEOUS | 60.00 | .059 | .00 |
| 500 | PROTECTION/INSURANCE | .00 | .000 | .00 |
| 600 | ACCESSORIES | 15838.29 | 15.504 | 54712.00 |
| 601 | UPHOLSTERY | 18266.46 | 17.881 | 59375.00 |
| 602 | DINING ROOM | 4983.58 | 4.879 | 8547.00 |
| 603 | BEDDING | 29437.75 | 28.817 | 80926.00 |
| 604 | BEDROOM | 18002.52 | 17.623 | 57334.00 |
| 605 | HOME OFF/ENTERTAINMENTS | 3679.99 | 3.602 | 11723.00 |
| 606 | OCCASSIONAL | 4211.73 | 4.123 | 13822.00 |
| 607 | OUTDOOR | 437.67 | .428 | 1401.00 |
| 610 | RECLINERS | 2859.93 | 2.800 | 8776.00 |
| 700 | PADS/CUSHIONS | 64.99 | .064 | 368.00 |
| 730 | SCOOTERS | 759.33 | .743 | 2431.00 |
| 760 | PILLOWS/MATTRESS PADS | 974.64 | .954 | 3342.00 |
| 770 | WHEELCHAIRS/WALKERS/CANES | 712.64 | .698 | 2818.00 |
| 780 | MOBILITY AIDS/ACCESSORIES | 3136.66 | 3.071 | 12527.00 |
| 790 | EZ ACCESS | 592.49 | .580 | 2126.00 |
| Total Count: 17 | | 104018.67 | 101.826 | 320228.00 |

nfivdval

# PART 5 – LINE 21 – FINISHED GOODS

# EXHIBIT "3"

# CHAPTER 11 DEBTOR PROJECTIONS
## Sleep Quarters Plus Inc.
**5/13/2026**

| | | July | August | September | October | Nov | Dec | Jan | Feb | March | April | May | June |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
| **INCOME** | | | | | | | | | | | | | |
| | Gross Sales | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| | **NET INCOME** | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| **EXPENSES** | | | | | | | | | | | | | |
| | COGS | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 |
| | Sales Tax | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 |
| | Rent | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Insurance (truck) | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 |
| | Electricity | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| | Istel | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | Verison | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 |
| | Insurance (Hartford Insurance) | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 |
| | Insurance (building) | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | Water | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 |
| | Fuel | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | Salaries | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| | Supplies | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| | SubV Trustee Fees | 1,000.00 | 1,000.00 | | | | | | | | | | |
| | **TOTAL EXPENSES** | 38,540.00 | 38,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 |
| **PLAN PAYMENTS** **Class** | | | | | | | | | | | | | |
| - | Allowed Administrative Claims | | | | | | | | | | | | |
| 0 | Priority Claims (IRS) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0 | Priority Claims (Comptroller) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1 | Allowed Secured Claim of Ellis County, Texas | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2 | Allowed Secured Claim of Texas Workforce Commission | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3 | Allowed Secured Claim of Citizens Bank of Texas | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 4 | Allowed Unsecured Claims | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 |
| 5 | Equity Interest Holders | | | | | | | | | | | | |
| | **TOTAL PLAN PAYMENTS** | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 |
| **NET INCOME** | | 538.46 | 538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 |
| **CUMULATIVE INCOME** | | 538.46 | 1,076.92 | 2,615.38 | 4,153.84 | 5,692.30 | 7,230.76 | 8,769.22 | 10,307.68 | 11,846.14 | 13,384.60 | 14,923.06 | 16,461.52 |

| **CALCULATION NOTES** | | | | Claim | Post-Pet (fn) | Pay Basis | |
|---|---|---|---|---|---|---|---|
| | Priority Claims (IRS) | Pay @ 7% for 60 mo from petition; interest from petition | 53 payments (est) | $ 345,396.18 | $ 14,023.08 | $ 359,419.26 | Disputed |
| | Priority Claims (Texas Comptroller) | Pay @ 12% for 60 mo from petition; interest from petition | 53 payments (est) | $ - | $ - | $ - | Paid at closing |
| 1 | Allowed Secured Claim of Ellis County, Texas | Pay @ 12% for 60 mo from petition; interest from petition | 53 payments (est) | $ - | $ - | $ - | |
| 2 | Allowed Secured Claim of Texas Workforce Commission | Pay @ 12% for 60 mo from petition; interest from petition | 53 payments (est) | $ - | $ - | $ - | Paid at closing |
| 3 | Allowed Secured Claim of Citizens Bank of Texas | Pay @ 6.75% for 60 mo based upon a 20 year amortization; balloon at end of plan term. | | $ 901,846 | | $ 901,846.45 | |
| 4 | Allowed Unsecured Claims | Pay @ 1% for 36 mo. | | $ 2,277.14 | | $ 2,277.14 | |
| 5 | Equity Interest Holders | Equity interests retained | | | | | |
| fn | | *Calculations of post-petition interest assume 7 months post-petition interest, followed by 53 monthly payments.* | | | | | |

UNSECUREDS:

Cellco Partnership d/b/a Verizon Wireless      $ 2,277.14

| July | August | September | October | Nov | Dec | Jan | Feb | March | April | May | June | July | August | September | October |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | Month 25 | Month 26 | Month 27 | Month 28 |
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 |
| 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 |
| 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 |
| 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 |
| 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 |
| 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 |
| 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 |
| 17,999.98 | 19,538.44 | 21,076.90 | 22,615.36 | 24,153.82 | 25,692.28 | 27,230.74 | 28,769.20 | 30,307.66 | 31,846.12 | 33,384.58 | 34,923.04 | 36,461.50 | 37,999.96 | 39,538.42 | 41,076.88 |

| Nov | Dec | Jan | Feb | March | April | May | June | July | August | September | October | Nov | Dec | Jan | Feb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 |
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 |
| 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 |
| 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 |
| 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 |
| 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | 64.23 | | | | | | | | |
| 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,921.54 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,538.46 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 |
| 42,615.34 | 44,153.80 | 45,692.26 | 47,230.72 | 48,769.18 | 50,307.64 | 51,846.10 | 53,384.56 | 54,987.25 | 56,589.94 | 58,192.63 | 59,795.32 | 61,398.01 | 63,000.70 | 64,603.39 | 66,206.08 |

| March Month 45 | April Month 46 | May Month 47 | June Month 48 | July Month 49 | August Month 50 | September Month 51 | October Month 52 | Nov Month 53 | Dec Month 54 | Jan Month 55 | Feb Month 56 | March Month 57 | April Month 58 | May Month 59 | June Month 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 | 46,000.00 |
| 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 | 21,000.00 |
| 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 | 4,572.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 | 639.00 |
| 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 | 232.00 |
| 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 | 217.00 |
| 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 |
| 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 | 6,500.00 |
| 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 | 37,540.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | | | |
| 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 | 6,857.31 |
| 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 | 1,602.69 |
| 67,808.77 | 69,411.46 | 71,014.15 | 72,616.84 | 74,219.53 | 75,822.22 | 77,424.91 | 79,027.60 | 80,630.29 | 82,232.98 | 83,835.67 | 85,438.36 | 87,041.05 | 88,643.74 | 90,246.43 | 91,849.12 |



EXHIBIT "4"

## A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

### B. Type of Loan

| | |
|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv Unins | 6. File Number **260419** |
| 4. ☐ VA   5. ☐ Conv Ins.   6. ☐ Seller Finance | 7. Loan Number |
| 7. ☒ Cash Sale. | 8. Mortgage Ins Case Number |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| 2400 W ENNIS LLC, a Texas limited liability company<br>995 I-35E<br>Waxahachie, TX 75165 | SLEEP QUARTERS PLUS, INC., a Texas corporation<br>2400 W. Ennis Avenue<br>Ennis, TX 75119 | , |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| LOT 1 WEST PLAZA 2.456 AC<br>2400 W Ennis Ave<br>Ennis, TX 75119 | Bison Title, LLC<br>301 North College Street<br>Suite 110<br>Waxahachie, TX 75165  Tax ID: 99-2702249<br>Underwritten By: Chicago Title Insurance Company |

| Place of Settlement | I. Settlement Date |
|---|---|
| Bison Title, LLC<br>301 North College Street<br>Suite 110<br>Waxahachie, TX 75165 | 5/7/2026<br>Fund: 5/7/2026 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | $975,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City property taxes | | 406. City property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. Assessment Taxes | | 408. Assessment Taxes | |
| 109. School property taxes | | 409. School property taxes | |
| 110. HOA Dues | | 410. HOA Dues | |
| 111. Other taxes | | 411. Other taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | | **420. Gross Amount Due to Seller** | $975,000.00 |
| **200. Amounts Paid By Or in Behalf Of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | 502. Settlement Charges to Seller (line 1400) | $116,452.25 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan      to | |
| 205. | | 505. Payoff of second mortgage loan   to | |
| 206. | | 506. | |
| 207. | | 507. CNB of Texas Payoff | $815,136.84 |
| 208. | | 508. State of Texas Lien Payoff | $22,214.70 |
| 209. | | 509. Texas Workforce Commission Payoff | $6,240.10 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City property taxes | | 510. City property taxes | |
| 211. County property taxes   01/01/26 thru 05/07/26 | | 511. County property taxes   01/01/26 thru 05/07/26 | $14,956.11 |
| 212. Assessment Taxes | | 512. Assessment Taxes | |
| 213. School property taxes | | 513. School property taxes | |
| 214. HOA Dues | | 514. HOA Dues | |
| 215. Other taxes | | 515. Other taxes | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | | **520. Total Reduction Amount Due Seller** | $975,000.00 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | | 601. Gross Amount due to seller (line 420) | $975,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | | 602. Less reductions in amt. due seller (line 520) | $975,000.00 |
| **303. Cash From Borrower** | | **603. Cash  Seller** | $0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following:  • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services;
• Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate;  • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality.

File No. 260419

### L. Settlement Charges

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700. Total Sales/Broker's Commission based on price** $975,000.00 @6 % = $58,500.00 | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. **$29,250.00** | to | **Tero Real Estate** | | |
| 702. **$29,250.00** | to | **Legacy Realty Group** | | |
| 703. Commission Paid at Settlement | | | | **$58,500.00** |
| 704. Portion of Commission Paid | to | **Tim Cummings** | | |
| 705. Portion of Commission Paid | to | **LJJM, Inc.** | | |
| **800. Items Payable in Connection with Loan** | | | | |
| 801. Loan Origination Fee % | to | | | |
| 802. Loan Discount % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mortgage Insurance Application | to | | | |
| 807. Assumption Fee | to | | | |
| **900. Items Required by Lender To Be Paid in Advance** | | | | |
| 901. Interest from 5/7/2026 to 6/1/2026 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | | | |
| **1000. Reserves Deposited With Lender** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ $3,582.01 | per month | | |
| 1005. Assessment Taxes | months @ | per month | | |
| 1006. School property taxes | months @ | per month | | |
| 1007. HOA Dues | months @ | per month | | |
| 1008. Other taxes | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee | to | | | |
| 1102. Abstract or title search | to | | | |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document Preparation | to | **WilsonDiebel, PLLC** | | $200.00 |
| 1106. Notary fees | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: ) | | | | |
| 1108. Title insurance | to | **Bison Title, LLC** | | $5,103.00 |
| (includes above items numbers: ) | | | | |
| 1109. Lender's coverage | $0.00/$0.00 . | | | |
| 1110. Owner's coverage | $975,000.00/$5,103.00 | | | |
| 1111. Escrow Fee | to | **Bison Title, LLC** | | $725.00 |
| 1112. State of Texas Policy Guaranty Fee | to | **Bison Title - GARC Fee** | | $2.00 |
| 1113. $350 of Title Premium | to | **Chicago Title Insurance Company** | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording Fees Deed $29.00 : Mortgage : Rel $29.00 | | to Bison Title, LLC - eRecording | | $29.00 |
| 1202. City/county tax/stamps Deed : Mortgage | to | | | |
| 1203. State tax/stamps Deed : Mortgage | to | | | |
| 1204. Tax Certificate | to | **Zentra Tax LLC** | | $86.60 |
| 1205. eRecording Fee | to | **Bison Title, LLC - eRecording** | | $11.70 |
| 1206. Filing Fee (Order) | to | **Bison Title, LLC - eRecording** | | $41.00 |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey | to | **Texas Reality Capture and Surveying, LLC** | | |
| 1302. Tax ID 208729 | to | **Ellis County Tax Assessor Collector** | | $48,572.03 |
| 1303. Tax ID 214435 | to | **Ellis County Tax Assessor Collector** | | $3,181.92 |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | | **$116,452.25** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

SLEEP QUARTERS PLUS., INC.,
a Texas corporation

SETTLEMENT AGENT CERTIFICATION
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____    5/7/26
Settlement Agent                Date

By: _____
Gaye Mirschke, Secretary

**Warning:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.